United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

J&J SPORTS PRODUCTIONS, INC.,       ) Case No. 11-5448-SC
                                    )
            Plaintiff,              ) ORDER GRANTING IN PART
                                    ) PLAINTIFF'S MOTION FOR
      v.                            ) DEFAULT JUDGMENT
                                    )
GUILLERMINA VAZQUEZ and SALVADOR     )
VAZQUEZ, individually and d/b/a     )
BELMAR-LA GALLINITA MEAT MARKET,    )
                                    )
            Defendants.             )
_____ )

I.    **INTRODUCTION**

     Now before the Court is the Motion for Default Judgment
brought by Plaintiff J & J Sports Productions ("Plaintiff") against
Defendants Guillermina and Salvador Vazquez, individually and d/b/a
Belmar-La Gallinita Meat Market (respectively, "Ms." or "Mr.
Vazquez"; collectively, "Defendants").[1]  ECF No. 19-1 ("Mot.").
Plaintiff alleges, in short, that Defendants unlawfully exhibited
at their business establishment a boxing match for which Plaintiff
held exclusive commercial distribution rights.  ECF No. 1
("Compl.") at 1.  Defendants have appeared through counsel and

_____

[1] The Complaint erroneously names Salvador Vazquez as Salvador
"Vaquez."  ECF No. 1 ("Compl.") at 1.  Many of Plaintiff's papers
and, consequently, some court records contain this typographic
error, which should be disregarded.

filed a brief in which they admit their default, as well as liability, but contest damages.  ECF No. 22 ("Opp'n").  The Court finds the matter suitable for determination without oral argument. Civ. L.R. 7-1(b).  For the reasons set forth below, the Court grants Plaintiff's Motion in part.[2]  The Court will separately enter judgment in favor of Plaintiff and award damages in the amount of $2,450.00.

## II.   BACKGROUND

The Court takes all of the factual allegations of the Complaint as true, except for those relating to damages.  Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977).  Because damages must be proven, the Court may consider evidence presented by the parties.  See Fed. R. Civ. P. 55(b); Pope v. United States, 323 U.S. 1, 12 (1944) ("It is a familiar practice . . . for a court upon default, by taking evidence when necessary . . ., to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").  Because Defendants admit liability and damages alone are at issue, the Court supplements the account contained in the Complaint with uncontested evidence relevant to the determination of damages.[3]

---

[2] As set forth in Section III infra, Plaintiff originally asserted four claims against Defendants but has since withdrawn two.

[3] In support of its Motion, Plaintiff submitted an affidavit from a private investigator, Tammy Joffe, who observed the accused activity at Defendants' establishment, as well as a declaration from its counsel, Thomas Riley.  ECF Nos. 19-3 ("Joffe Aff."), 19-2 ("Riley Decl.").  Plaintiff also submitted the affidavit of Joseph M. Gagliardi, President of J & J Sports Productions.  ECF No. 20 ("Gagliardi Aff.").  Much of Mr. Gagliardi's (obviously form) affidavit consists of either legal argument or opinion, both of which are inadmissible.  Gagliardi Aff. ¶¶ 13-15, 18 (argument); 16-17 (opinion); see also Flintkote Co. v. Gen. Acc. Assur. Co.,

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

On the night of Saturday, November 13, 2010, Manny Pacquiao fought Antonio Margarito for the WBC Light Middleweight boxing championship. <u>See</u> Compl. ¶ 10. The fight, along with undercard bouts, was televised nationwide via pay-per-view, under the title "Tactical Warfare" (herein, the "Program"). <u>Id.</u> Plaintiff is a sub-licensor of rights to exhibit pay-per-view fights like the Program in commercial establishments such as bars, restaurants, hotels, casinos, and racetracks. <u>See id.</u> ¶ 11. Plaintiff had such a sub-licensing arrangement for the Program. <u>Id.</u> Plaintiff bases the cost of the commercial sub-license on the size of the commercial establishment. Gagliardi Aff. Ex. 1. The least expensive sub-license covers establishments that hold zero to one hundred patrons and costs $2,200.00. <u>Id.</u>

At about five o'clock on the day of the Pacquiao-Margarito bout, Mr. Vazquez left the establishment he co-owns with Ms. Vazquez, the Belmar-La Gallinita Meat Market, located at 2989 24th Street in San Francisco, California (the "establishment"). S. Vazquez Decl. ¶ 5.[4] The establishment consists of three distinct rooms: a meat market and a convenience store, which are open only during the day, and a taqueria, which is open both day and night.

---

410 F. Supp. 2d 875, 885 (N.D. Cal. 2006) (disregarding legal argument and opinion). The Court disregards these portions of Mr. Gagliardi's affidavit.

[4] Defendants filed three declarations with their opposition brief, those of Salvador Vazquez, Guillermina Vazquez, and Victor Jaramillo. ECF Nos. 22-1 ("S. Vazquez Decl."), 22-2 ("G. Vazquez Decl."), 22-3 ("Jaramillo Decl."). Four weeks later, after briefing closed, Defendants filed a fourth declaration, that of David Asencio. ECF No. 24 ("Asencio Decl."). Defendants' brief references Asencio's declaration and the record does not reflect why his declaration was not filed along with the others. Plaintiff objects to the late-filed declaration on a number of grounds. ECF No. 25 ("Obj'n"). Because the Court does not rely on the contested declaration, Plaintiff's Objection is OVERRULED as moot.

**United States District Court**
For the Northern District of California

1   Id. ¶ 3; Joffe Aff. at 1.  The taqueria occupies about 180 square

2   feet.  S. Vazquez Decl. ¶ 3.  When Mr. Vazquez left work, he locked

3   up the meat market and convenience store, and entrusted the

4   taqueria to two employees.  Id. ¶ 5.  Ms. Vazquez was not at work

5   at the establishment that evening.  G. Vazquez Decl. ¶ 4.

6        One of the employees working at the taqueria that night, David

7   Jaramillo, had a brother, Victor.  See Jaramillo Decl. ¶ 5.  Victor

8   lived in a room above the establishment.  Id. ¶ 3.  Victor decided

9   he would like to watch the fight with his brother, so he ordered it

10  through his DirecTV satellite account, which was licensed for

11  residential use only.  Id. ¶¶ 4-5.  Victor then took his television

12  downstairs to the taqueria, put it on top of a refrigerator, and

13  connected his DirecTV service to the television.  Id. ¶ 5.  Neither

14  Victor nor anyone else asked Mr. or Ms. Vazquez for permission to

15  view the Program in the establishment.  Id. ¶ 6; S. Vazquez ¶ 6; G.

16  Vazquez ¶ 5.  Victor declares that he did not know he was breaking

17  the law when he exhibited the Program.  Jaramillo Decl. ¶¶ 6, 9.

18       At about 9:25 p.m., a private investigator approached the

19  taqueria.  Joffe Aff. at 1.  The investigator observed a crowd

20  gathered on the sidewalk outside.  Id.  As she entered the

21  taqueria, she was not asked to pay a cover charge.  Id.  Inside,

22  she saw that the establishment was crowded.  Id.  There was only

23  one table, and no seats were available.  Id.  She bought a bottle

24  of soda for a dollar-fifty, and conducted a series of headcounts:

25  there were either 32 or 33 people inside, though the room was only

26  supposed to hold about 25 people.  See id.  She observed the

27  Program being televised on a single "small, box-style TV,

28  approximately 20 [inches], positioned up above the refrigerator

4

**United States District Court**
For the Northern District of California

case." Id. She noted the color of the fighters' trunks, and that Pacquiao was "dominat[ing] the action in the tenth round." Id. By 9:35 p.m., about ten minutes after she'd arrived, the investigator left. Id. at 2.

On November 9, 2011, relying on the information contained in the private investigator's report, Plaintiff filed its Complaint. See Compl. Plaintiff alleges that it owned exclusive commercial distribution rights for the Program, and that Defendants did not purchase the commercial license required to exhibit the Program lawfully. Compl. ¶¶ 10-13. Plaintiff asserts four claims against Defendants: (1) violation of the Federal Communications Act of 1934, 47 U.S.C. § 605 ("Communications Act"), which prohibits the unauthorized publication or use of wire or radio transmissions; (2) violation of 47 U.S.C. § 553, which prohibits unauthorized reception of cable service; (3) common-law conversion; and (4) violation of California's Unfair Competition Law, California Business and Professions Code § 17200 et seq. ("UCL"). The Complaint prays for: statutory damages totaling $170,000; compensatory, exemplary, and punitive damages under the conversion claim; declaratory and injunctive relief, as well as restitution, under the UCL; and attorney fees and costs under each of its claims. Compl. at 8-9. As discussed infra, Plaintiff has abandoned its request for some of this relief.

On January 17, 2012, Plaintiff caused Mr. Vazquez to be served by personal service. ECF No. 11. On January 25, Plaintiff effected substitute service on Ms. Vazquez at Defendants' business address. ECF No. 13. Defendants do not challenge service.

On February 22, Plaintiff moved for entry of default against

**United States District Court**
For the Northern District of California

1   Mr. Vazquez.  ECF No. 12.  On February 24, the Clerk entered

2   default against him.  ECF No. 14.  On March 1, Plaintiff moved for

3   entry of default against Ms. Vazquez.  ECF No. 15.  On March 2, the

4   Clerk entered default against her.  ECF No. 16.  On March 7,

5   counsel for Defendants entered an appearance.  ECF No. 17.

6         On April 2, Plaintiff filed the instant Motion.  On April 6,

7   at a previously scheduled status conference, counsel for Defendants

8   requested and received leave from the Court to file a response to

9   Plaintiff's Motion.  ECF No. 21.  Defendants filed the Opposition

10  and supporting declarations on April 16.  On April 23, Plaintiff

11  filed its reply brief.  ECF No. 23 ("Reply").

12

13  **III.  <u>DISCUSSION</u>**

14        Plaintiff's Complaint asserts four claims, but since filing

15  its initial pleading Plaintiff has modified its demands and now

16  seeks relief only under its § 605 and conversion claims.

17  Specifically, Plaintiff seeks damages in the amount of $110,000.00

18  under § 605 and, under their conversion claim, $2,200.00 -- the

19  cost of a commercial license for a venue the size of the taqueria.

20  Riley Decl. ¶¶ 6-7.  The Court determines that Plaintiff has

21  abandoned its claims under § 553 and the UCL, and DISMISSES those

22  claims without prejudice.[5]

23

24  _____

    [5] Plaintiff's abandonment of its § 553 claim is especially

25  appropriate in light of the facts of this case.  "A signal pirate
    violates section 553 if he intercepts a cable signal, he violates

26  section 605 if he intercepts a satellite broadcast.  But he cannot
    violate both by a single act of interception."  <u>J & J Sports</u>

27  <u>Productions, Inc. v. Manzano</u>, C-08-01872 RMW, 2008 WL 4542962, at
    *2 (N.D. Cal. Sept. 29, 2008).  It is uncontroverted that the

28  Program aired at Defendants' establishment through a DirecTV
    satellite broadcast.  Accordingly, on the facts of this case,
    Plaintiff could bring only a § 605 claim.

**United States District Court**
For the Northern District of California

1    With respect to the remaining claims, the parties' positions

2  may be summarized as follows: Defendants admit liability but urge

3  the Court to impose only minimal damages, while Plaintiff seeks

4  maximal damages to deter signal piracy.  The Court concludes that

5  Plaintiff's prayer for damages with respect to § 605 overreaches,

6  but that Plaintiff is entitled to the relief it seeks on its

7  conversion claim.

8    Before moving to the substance of the issues, however, the

9  Court addresses a preliminary matter raised by Plaintiff.

10  Plaintiff argues that, because Defendants have defaulted, they have

11  no right to present evidence on the issue of damages.  Reply at 2.

12  The Court disagrees.  First, Plaintiff's position is in obvious

13  tension with Federal Rule of Civil Procedure 55.  Rule 55 permits a

14  court weighing the entry of a default judgment to take evidence to

15  determine the amount of damages, without placing limits on how or

16  from whom.  See Fed. R. Civ. P. 55(c); cf. Adriana Int'l Corp. v.

17  Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) ("default judgment

18  generally precludes a trial of the facts except as to damages").

19    Second, Plaintiff's position is unsupported by persuasive

20  authority.  The two cases cited by Plaintiff are inapposite.  The

21  first, Cohen, concerned a defendant who attempted to file an answer

22  after entry of default.  See Cohen v. Murphy, C 03-05793 HRL, 2004

23  WL 2779942 (N.D. Cal. Apr. 20, 2004).  The three-paragraph opinion

24  in Cohen, which cites no authority except a Fourth Circuit decision

25  from 1927 and an Illinois district court case, stands for nothing

26  more than the uncontroversial proposition that a defendant may not

27  file an answer, that is, a pleading, after entry of default -- an

28  issue which is wholly distinct from presenting evidence of damages.

**United States District Court**
For the Northern District of California

1    The other case cited by Plaintiff, <u>Great American</u>, is similarly

2    unpersuasive.  <u>Great Am. Ins. Co. v. M.J. Menefee Const., Inc.</u>,

3    F06-0392 AWIDLB, 2006 WL 2522408 (E.D. Cal. Aug. 29, 2006).  Like

4    <u>Cohen</u>, <u>Great American</u> addresses an issue not presented here, the

5    timeliness of the filing of a pleading, this time a counterclaim.

6    <u>Id.</u> at *2.  The court in that case cited only <u>Cohen</u>, the same

7    Fourth Circuit opinion cited in <u>Cohen</u>, and district court opinions

8    from outside this circuit.  <u>Id.</u>  These authorities are

9    unpersuasive.

10        Because Plaintiff has presented no persuasive reason to

11   disregard Defendants' damages evidence, the Court takes it into

12   account as it proceeds to the substance of Plaintiff's claims.

13   **A.   <u>Section 605</u>**

14        The Communications Act provides, in pertinent part, that "[n]o

15   person not being authorized by the sender shall intercept any radio

16   communication and divulge or publish the existence, contents,

17   substance, purport, effect or meaning of such intercepted

18   communication to any person."  47 U.S.C. § 605(a).  The

19   Communications Act provides a private right of action to persons

20   "aggrieved" by violations of the act.  <u>Id.</u> § 605(e)(3)(A).  A

21   "person aggrieved" includes a party "with proprietary rights in the

22   intercepted communication by wire or radio, including wholesale or

23   retail distributors of satellite cable programming."  47 U.S.C. §

24   605(d)(6).  Here, Plaintiff alleges that it had exclusive

25   commercial licensing rights for the Program.  Compl. ¶ 10.  Thus,

26   Plaintiff is an aggrieved person for purposes of the statute.

27   Plaintiff further alleges that Defendants were not authorized to

28   intercept and exhibit the Program, yet did so.  <u>Id.</u> ¶ 13.

**United States District Court**
For the Northern District of California

1   Defendants admit that the Program was unlawfully exhibited in their

2   establishment through a non-commercial DirecTV satellite

3   transmission, Opp'n at 3, and satellite television signals are

4   among the communications protected by § 605, <u>DirecTV, Inc. v. Webb</u>,

5   545 F.3d 837, 844 (9th Cir. 2008).  Hence, Plaintiff has made out a

6   prima facie case for Defendants' liability under § 605(a).

7   Defendants do not contest liability.[6]

8       The central issue, then, is how much Plaintiff is entitled to

9   in damages.  Section 605(e)(3)(C) sets forth the damages available

10  in a civil action brought by an aggrieved person such as Plaintiff.

11  Initially, an aggrieved person must elect to seek either actual or

12  statutory damages.  47 U.S.C. § 605(e)(3)(C)(i).  Plaintiff has

13  opted for statutory damages.  <u>See</u> Compl. ¶ 18.  Statutory damages

14  may be awarded for each violation "in a sum of not less than $1,000

15  or more than $10,000, as the court considers just."  47 U.S.C. §

16  605(e)(3)(C)(i)(II).

17      This is not the end of the matter.  Upon certain factual

18  findings, § 605(e)(3)(C) allows both upward and downward departures

19  from the standard range of damages.  The statute provides for

20  enhanced damages in the amount of up to $100,000 per violation if

21  "the court finds that the violation was committed willfully and for

22  purposes of direct or indirect commercial advantage or private

23  financial gain."  47 U.S.C. § 605(e)(3)(C)(ii).  The statute also

24

25  [6] This finding assumes that Defendants are liable under § 605
    simply by virtue of the Program having been exhibited in their
26  establishment by a third-party non-employee (Victor Jaramillo),
    without Defendants' knowledge and when Defendants themselves were
27  not present, but while their employees (David Jaramillo and David
    Asencio) were present and did nothing to prevent the Program from
28  being shown.  <u>See</u> Opp'n at 2-3.  No party has asked the Court to
    test this assumption, so the Court does not.

**United States District Court**
For the Northern District of California

1    provides for reduced damages of "not less than $250" if "the court

2    finds that the violator was not aware and had no reason to believe

3    that his acts constituted a violation of" § 605.  Id. §

4    605(e)(3)(C)(iii).  Plaintiff urges the Court to impose the maximum

5    allowable amount of both regular and enhanced damages, totaling

6    $110,000.  Riley Decl. ¶¶ 6-7.  Defendants argue for the minimal

7    allowable amount of reduced damages, totaling $250.  Opp'n at 6.

8         Plaintiff has not shown that it is entitled to enhanced

9    damages under § 605(e)(3)(C)(ii).  On the uncontested facts before

10   it, the Court sees no evidence that Defendants exhibited the

11   Program either willfully or for commercial or personal advantage.

12   Defendants required no cover charge to enter the establishment on

13   the night in question.  Mr. Vazquez, who does the books for the

14   establishment, declares that the receipts from that night were

15   consistent with the taqueria's regular prices, suggesting that

16   Defendants did not use the Program to charge a premium.  S. Vazquez

17   Decl. ¶ 7.  There is no claim that Defendants ever advertised or

18   promoted the exhibition of the Program at their establishment, or

19   even that Defendants knew in advance that it would be shown there.

20   Defendants, after all, were not present at the time the Program was

21   shown at their establishment, and it is uncontested that no one

22   ever asked them for their permission to do so.  The Court does not

23   see how Defendants could engage in willful infringement through

24   acts they knew nothing about.  For the same reasons, the Court

25   would be hard-pressed to find that the Defendants harbored any

26   "purpose" of furthering a commercial advantage or reaping private

27   gain through acts of which they were wholly ignorant.  The Court

28   declines to award enhanced damages under § 605(e)(3)(C)(ii).

The next question is whether Defendants can justify a downward departure from the Communications Act's usual damages range.  To do so, Defendants must establish that they were "not aware" and "had no reason to believe" that the infringing acts violated the law. 47 U.S.C. § 605(e)(3)(C)(iii).  The Court has already found that Defendants did not know what was going on in the establishment on the night of the bout, that is, that they were "not aware" of the infringing activity, let alone that it amounted to a violation of the law.  The Court also finds, for the same reason, that they had "no reason to believe" that the infringing activity violated the law, for the simple reason that they did not know it was occurring. These facts, combined with the absence of any exacerbating circumstances, lead the Court to determine that reduced damages are justified in this case.

Plaintiff argues that reduced damages are inappropriate in light of the policy of signal piracy deterrence embodied in the statute.  Mot. at 19.  Plaintiff even goes so far as to say that low damages awards by district courts are "a major reason why there [has] been little to no decrease in piracy."  Id.  Plaintiff insists that "Defendant[s] must be held accountable for a substantial amount above the market value of the sublicense fee to broadcast the Program," lest a perverse incentive to violate the law arise.  Id.

Plaintiff's theory as to the root causes of signal piracy may or may not be true.  If Congress finds it is true, Congress may amend the Communications Act consistent with its view of what will best effectuate its policies.  Meanwhile, as written, the Communications Act expressly contemplates leniency for unwitting

violators -- which suggests that Congress has balanced its policy of deterrence against other values.  Because Defendants satisfy the statutory criteria for reduced damages, and, more than that, Defendants appear to have had no idea that their establishment was being used to violate § 605, the Court believes this to be a paradigmatic case for reduced damages.  Things would be different if Defendants had violated the law previously -- repeat offenses could and should weigh heavily toward a finding of willful infringement -- but Plaintiff does not claim that Defendants are repeat offenders.

Pursuant to the statutory criteria, the Court AWARDS Plaintiff reduced damages of $250 for Defendants' admitted but unwitting violation of § 605.

**B.   Conversion**

As a preliminary matter, the Court notes that while Plaintiff invokes only the Court's federal-question jurisdiction under 28 U.S.C. § 1331, see Compl. ¶¶ 1-3, in order to decide Plaintiff's conversion claim (or the abandoned UCL claim) it would have to assert supplemental jurisdiction under 28 U.S.C. § 1367(a).  "A federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in 28 U.S.C. § 1367(c)."  Long v. City & Cnty. of Honolulu, 511 F.3d 901, 907 (9th Cir. 2007).  The Court determines that asserting supplemental jurisdiction over Plaintiff's conversion claim is appropriate here because: the Court is satisfied that it has jurisdiction over Plaintiff's federal statutory claims; the conversion claim is based on the same allegations; and none of the

**United States District Court**
For the Northern District of California

factors enumerated in 28 U.S.C. § 1367(c) are present.[7]  A federal court exercising supplemental jurisdiction over a claim applies the law of its forum state to that claim.  Bass v. First Pac. Networks, Inc., 219 F.3d 1052, 1055 n.2 (9th Cir. 2000).  Because this Court sits in California, it applies California's law of conversion.

"Under California law, conversion has three elements: (1) ownership or right to possession of property; (2) wrongful disposition of the property right of another; and (3) damages."  J & J Sports Productions v. Coyne, --- F. Supp. 2d ---, C 10-04206 CRB, 2012 WL 761688, at *7 (N.D. Cal. Mar. 7, 2012) (citing G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv. Inc., 958 F.2d 896, 906 (9th Cir. 1992)).  Although conversion generally applies to tangible property, intangible property such as the exclusive distribution rights over a program may be capable of being converted.  Id. (citing Don King Prods./Kingvision v. Lovato, 911 F. Supp. 419, 423 (N.D. Cal. 1995)).  California law provides that damages for conversion are based on the value of the property at the time of the conversion.  Krueger v. Bank of Am., 145 Cal. App. 3d 204, 215 (1983).

In this case, Plaintiff has alleged its ownership over the commercial distribution rights to the Program.  Compl. ¶ 10.  It alleges that Defendants showed the Program at their establishment in contravention of Plaintiff's exclusive commercial distribution

---

[7] Section 1367(c) permits a district court to decline supplemental jurisdiction over a claim "if (1) the claim raises a novel or complex issue of State law,(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,(3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).

rights.  Id. ¶ 13.  And Plaintiff has alleged damages, in the form of the commercial license fee that Defendants should have paid. Id. ¶ 26.  Plaintiff therefore makes out a prima facie case of conversion.  Defendants do not contest liability and, with respect to the conversion claim, they appear to concede damages as well. Opp'n at 2 (acknowledging that California statutorily limits damages for conversion to the value of the thing converted).  The commercial license would have cost Defendants $2,200.00, Gagliardi Aff. ¶ 8, and Plaintiff does not seek more than that, Riley Decl. ¶¶ 5-6.  The Court therefore GRANTS Plaintiff's Motion for Default Judgment with respect to its conversion claim and awards Plaintiff $2,200.00 in compensatory damages.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

**IV.   CONCLUSION**

For the reasons set forth above, the Court GRANTS Plaintiff's Motion for Default Judgment with respect to its § 605 and conversion claims.  As to Plaintiff's § 605 and conversion claims, the Court will enter Judgment separately in favor of Plaintiffs and AWARD Plaintiff $250.00 in statutory damages for its § 605 claim and $2,200.00 for its common law conversion claim, for a total of $2,450.00 in damages.  The Court awards no other relief.  The Court does not enter judgment with respect to Plaintiff's claims for violations of 47 U.S.C. § 553 and Cal. Bus. & Prof. Code § 17200 et seq., which Plaintiff has withdrawn.


IT IS SO ORDERED.


Dated: July 24, 2012                          _____

                                              UNITED STATES DISTRICT JUDGE